# PLAINTIFFS' EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF MICHIGAN, CITY OF ROMULUS, | No. 2:26-cv-10968 |
| Plaintiffs, | HON. JONATHAN J.C. GREY |
| v. | MAG. ELIZABEHT A. STAFFORD |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, TODD M. LYONS, in his official capacity as Senior Official Performing the Duties of the Director of Immigration and Customs Enforcement. | **Declaration of Jerrod Sanders** |
| Defendants. | |

I, Jerrod Sanders, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am the Director of the Water Resources Division at Michigan Department of Environment, Great Lakes, and Energy (EGLE).

2.   In my role as Director of the Water Resources Division, I am responsible for the implementation of state and federal programs that protect and enhance Michigan's water resources.

3.   Among other responsibilities, EGLE administers the State of Michigan's environmental quality and compliance programs, issues a wide variety of permits for activities regulated under the State's various environmental statutes, including the Natural Resources and Environmental Protection Act (the NREPA), and ensures compliance with those statutes.

4.   I have personal knowledge of the information discussed below, or have knowledge of this information based on my review of information provided by my staff.

5.   I have read the Early Notice and Public Review of a Proposed Activity in a 100- to 500-Year Floodplain that the Department of Homeland Security (DHS) issued on or about February 20, 2026, related to a warehouse in located at 7525 Cogswell Street, Romulus, Michigan (Romulus Warehouse).  Based on that Notice, I understand that DHS intends to convert the Romulus Warehouse into an immigration detention center.

6.      Neither DHS nor Immigration and Customs Enforcement (ICE) has contacted EGLE about the Romulus Warehouse, proposed construction at the site, or the proposed use of the site.  Additionally, neither DHS nor ICE have submitted any applications for permits to EGLE.  And, EGLE has received no indication that DHS or ICE conducted any environmental review under the National Environmental Policy Act (NEPA).

7.      EGLE holds a conservation easement over a 118-acre area located adjacent to the Romulus Warehouse property.  The area covered by this easement includes a wetland.  EGLE obtained this easement in 2012 as part of a wetlands mitigation agreement with Post It Stables, Inc.  The purpose of this agreement was to ensure that Michigan's environment would not suffer a net loss of wetlands as a result of Post It Stables' permitted activities in another location.  A true and correct copy of the easement agreement, including exhibits A-E to the agreement, is attached Attachment 1.

8.      EGLE maintains conservation easements across the State to ensure protection of the State's natural resources, environment, and wildlife habitats.  Conservation easements covering wetlands are

3

important to the State because they protect, in perpetuity, at-risk ecosystems that provide flood mitigation, water quality benefits, and fisheries and wildlife habitat.  Wetlands are also known to provide critical habitat to a disproportionately large number of threatened and endangered species.

9.     The construction of an immigration detention center at the Romulus Warehouse property and use of the property as a detention center may have adverse impacts to adjacent properties and the wetland protected under EGLE's conservation easement.

10.     The wetland protected under EGLE's conservation easement is downstream from the Romulus Warehouse property and the two properties are connected by the McClaughrey Drain.  As a result, water from the Romulus Warehouse property may enter the protected wetland through the McClaughrey Drain.

11.     In addition, the Romulus Warehouse property is located in a floodplain and contains a floodway.  The below map shows floodplain and floodway on the property, with orange areas reflecting 500-year floodplain, blue areas reflecting 100-year floodplain, and the red-blue cross-hatched area covering floodway:



12. Based on my understanding of the floodway, waters that may enter the floodway from the Romulus Warehouse property would likely flow to the wetland protected under EGLE's conservation easement.

13. Because it is reasonably likely waters from the Romulus Warehouse property will enter the protected wetland through the McClaughrey Drain and/or the floodway, and though DHS's construction plan and use of the Romulus Warehouse are unknown, EGLE is concerned that construction and operation of the Romulus Warehouse as a detention center may adversely impact nearby properties, the McClaughrey Drain, and the protected wetland.

5

14.    For example, upon information and belief, EGLE understands that the sewer line connecting the Romulus Warehouse to the City-owned main sewer line lacks capacity to handle the load of the detention center expected at the facility.  If the sewer line backs up, it is reasonably likely that human sewage would enter the McClaughrey Drain and the protected wetland.  If sewage were to enter these water bodies, it would have negative impacts on water quality, oxygen availability, and downstream public uses of the water bodies.  Further, sewage discharge may negatively impact public health through the spread of human pathogens.

15.    In addition, based on the Floodplain Notice, DHS intends to erect a fence around the property.  The location of the fence and the type of fence are unknown.  However, if the fence were to block the floodway, the fence could cause increased flooding on upstream properties, soil erosion on adjacent properties, and unnatural accumulation of eroded sediment and debris within the protected wetland.  Moreover, if the fence is erected (or any other construction occurs) within the floodway, DHS would be required to obtain a permit, under Part 31 of the NREPA, from EGLE and provide a hydraulic

6

model to show the fence would not cause increased flooding on upstream properties.

16.    Other, still-unknown construction or operational activities at the proposed site could implicate other, potential adverse impacts to the surrounding environment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  March 30, 2026

_____
Jerrod Sanders
EGLE

7

Sanders Decl. Attachment 1



Bernard J. Youngblood
Wayne County Register of Deeds
August 17, 2012  09:33 AM
Inst:2012322825   EAS   Pages:22
Liber:50039  Page:980

## AGREEMENT FOR CONSERVATION EASEMENT

(This instrument is exempt from County and State transfer taxes
pursuant to MCL 207.505(a) and MCL 207.526(a), respectively)

This CONSERVATION EASEMENT is created on August 1ɬ, 2012, by and between the City of Romulus, a Michigan municipality, whose address 11111 Wayne Road, Romulus, Michigan 48174 (Grantor) and the Michigan Department of Environmental Quality (DEQ), whose address is P.O. Box 30458, Lansing, Michigan 48909-7958 or Constitution Hall, 2nd Floor South, 525 West Allegan Street, Lansing, Michigan 48933 (Grantee);

The Grantor is the fee simple title holder of real property located in the City of Romulus, Wayne County, and State of Michigan, legally described in Exhibit A.

The DEQ is the agency charged with administering Part 303, Wetlands Protection, of the Natural Resources and Environmental Protection Act, 1994 PA 451, as amended (NREPA), and

Permittee , Post It Stables, Inc., a Michigan corporation, whose address is 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025 has applied for a Permit (DEQ File Number 07-82-0174-P), pursuant to Part 303, to authorize activities that will impact regulated wetland.  The DEQ evaluated the permit application and determined that a permit could be authorized for certain activities within regulated wetlands provided certain conditions are met, and

As a condition of the above-referenced permit, Grantor on behalf of Permitee has agreed to grant the DEQ a Conservation Easement that protects the wetland mitigation site and/or the remaining wetlands on the property and restricts further development to the area legally described in Exhibit B.  The Conservation Easement (the Easement Premises) consists of approximately 118.12 acre(s).  A survey map depicting the Easement Premises is attached as Exhibit C. The DEQ shall record this Agreement with the county register of deeds.

ACCORDINGLY, Grantor hereby conveys unto the Grantee, forever and in perpetuity, this Conservation Easement as set forth in this Agreement pursuant to Subpart 11 of Part 21, Conservation and Historic Preservation Easement, of the NREPA, MCL 324.2140 et seq., on the terms and conditions stated below.

Sanders Decl. Attachment 1

## COVENANTS, TERMS, CONDITIONS AND RESTRICTIONS

1. The purpose of this Agreement is to protect the functions and values of existing or established wetlands and its natural resource values on the Easement Premises, consistent with the Permit, and the protection of the benefits to the public derived from wetlands and integral habitat, by requiring Grantor to maintain the Easement Premises in its natural and undeveloped condition.

2. Except as authorized under DEQ Permit Number 07-82-0174-P, issued on 05/14/2008 or as otherwise provided in this Agreement, Grantor shall refrain from, and prevent any other person from, altering or developing the Easement Premises in any way.  This includes, but is not limited to:

   a) Alteration of the surface topography;
   b) Creation of paths, trails, or roads;
   c) The placement of fill material as defined in Part 303 of the NREPA, MCL 324.30301 et seq., as amended;
   d) Dredging, removal or excavation of any soil or minerals;
   e) Drainage of surface or groundwater;
   f) Construction or placement of any structure;
   g) Plowing, tilling, mowing or cultivating the soils or vegetation;
   h) Alteration or removal of vegetation, including the planting of non-native species;
   i) Ranching, grazing, farming;
   j) Use of chemical herbicides, pesticides, fungicides, fertilizers, spraying with biocides, larvicides or any other agent or chemical treatments, unless as part of an DEQ-approved Management Plan;
   k) Construction of unauthorized utility or petroleum lines;
   l) Storage or disposal of ash, garbage, trash, debris, abandoned equipment or accumulation of machinery, bio-solids or other waste materials, including accumulated vegetative debris, such as grass clippings, leaves, yard waste or other material collected and deposited from areas outside the Easement Premises;
   m) Use or storage of automobiles, trucks or off-road vehicles including, but not limited to, snowmobiles, dune buggies, all-terrain vehicles, and motorcycles;
   n) Placement of billboards or signs, except as otherwise allowed in the Permit or this Agreement;
   o) Use of the wetland for the dumping of untreated storm water or the directing of treated storm water to the easement premises at a volume that adversely impacts the hydrology of the wetland;
   p) Actions or uses detrimental or adverse to water conservation and purity, and fish, wildlife or habitat preservation.

3. A. Cutting down, burning, destroying, or otherwise altering or removing trees, tree limbs, shrubs or other vegetation, whether living or dead, is prohibited within the Easement Premises, except with the written permission of Grantee, expressly for the removal of trees or limbs to eliminate danger to health and safety, to reduce a threat of infestation posed by diseased vegetation, invasive non-native plant species that endanger the health of native species or as otherwise provided in the DEQ-approved Management Plan for the Easement Premises (Exhibit E).

   B. The Grantor desires to conduct activities to enhance and protect habitat, including installing structures such as birdhouses and waterfowl nesting structures, etc.; installing barriers to control harmful vehicular or pedestrian activities; controlling non-native, noxious, or nuisance invasive plant species and shrubs; and allowing public access through the use of walking paths, wetland observation platforms, and wetland community boardwalks, etc. within the Conservation Easement. These activities may be authorized at Grantee's sole discretion and written approval of plans for such activities and, if applicable, issuance of a permit under Part 303, Wetlands Protection, of the Natural Resources and Environmental Protection Act, MCL 324.30301 et. seq.

Sanders Decl. Attachment 1

4. Grantor is not required to restore the Easement Premises due to alterations resulting from causes beyond the owner's control, including, but not limited to, unauthorized actions by third parties that were not reasonably foreseeable; natural causes or natural disasters, such as unintentional fires, floods, storms, or natural earth movement.

5. Grantor, Permittee or its authorized agents or representatives may enter the Easement Premises to perform activities within the Easement Premises consistent with the Permit or the mitigation requirements. Grantor or Permittee shall provide 5 days notice to the Grantee of undertaking any mitigation activity, even if the mitigation project has been conceptually approved. Any activities undertaken pursuant to the Permit, a mitigation project or this Agreement, shall be performed in a manner to minimize the adverse impacts to existing wetland or mitigation areas.

6. Grantor warrants that Grantor has good and sufficient title to the Easement Premises described in Exhibit B.

7. Grantor warrants that any other existing interests or encumbrances in the Easement Premises have been disclosed to the DEQ.

8. Grantor warrants that to the best of Grantor's knowledge no hazardous substances or hazardous or toxic wastes have been generated, treated, stored, used, disposed of or deposited in or on the property.

9. This Agreement does not grant or convey to Grantee or members of the general public any right to possession or use of the Easement Premises.

10. Grantor shall continue to be responsible for the upkeep and maintenance of the Easement Premises to the extent it may be required by law.

11. Grantee and its authorized employees and agents, as shown in Exhibit D, may enter the Easement Premises at reasonable times to determine whether the Easement Premises are being maintained in compliance with the terms of this Agreement, mitigation, or other conditions of the Permit; and for purposes of taking corrective actions for failure to comply. If Grantee is entering the Easement Premises for purpose of taking corrective actions, Grantor shall be provided with 14 days notice to provide the opportunity to cure the failure to comply.

12. This Agreement shall be binding upon the successors and assigns of the parties and shall run with the land in perpetuity, unless modified or terminated by written agreement of the parties.

13. This Agreement may be modified only in writing through amendment of the Agreement. Any modification shall be consistent with the purpose and intent of the Agreement.

14. In addition to the right of the parties to enforce this Agreement, it is also enforceable by others against the owner of the land, in accordance with Part 21, Subpart 11 of the NREPA, MCL 324.2140 *et seq*, as amended.

15. Grantor shall indicate the existence of this Agreement on all future deeds, mortgages, land contracts, plats, and any other legal instrument used to convey an interest in the Easement Premises.

16. A delay in enforcement shall not be construed as a waiver of the Grantee's rights to enforce the conditions of this Agreement.

17. This Agreement shall be liberally construed in favor of maintaining the purpose of the Conservation Easement.

18. If any portion of this Agreement is determined to be invalid by a court of law, the remaining provisions will remain in force.

19. This Agreement will be construed in accordance with Michigan law. All legal action related to this conservation easement must be filed and pursued in Michigan state courts.

20. In addition to the terms of the Permit issued by Grantee, this document sets forth the entire agreement of the parties. It is intended to supersede all prior discussions or understandings.

21. Within 90 days after this Agreement is executed, Grantor shall place and maintain, at Grantor's expense, signs, fences, or other suitable markings along the Easement Premises to clearly demarcate the boundary of the Easement Premises, or as otherwise provided in the Permit.

22. The terms 'Grantor' and 'Grantee' wherever used in this Agreement, and any pronouns used in place thereof, shall include, respectively, the above-named Grantor and their personal representatives, heirs, successors, and assigns, and the above-named Grantee and their successors and assigns.

## LIST OF ATTACHED EXHIBITS

**Exhibit A:**   A legal description of the Grantor's property, inclusive of the Easement Premises.

**Exhibit B:**   A legal description of the Easement Premises.

**Exhibit C:**   A survey map depicting the Easement Premises that also includes identifiable landmarks, such as nearby roads, to clearly identify the easement site.

**Exhibit D:**   A legal description that provides a path of legal access to the Easement Premises and a map that indicates this access site that DEQ staff will use for ingress and egress to and from the Easement Premises or, if the Easement is directly connected to a publicly accessible point, such as a public road, a statement is required that authorizes DEQ staff ingress and egress to and from the Easement Premises with a map that clearly indicates the connection of the public access site to the Easement Premises.

**Exhibit E:**   Wetland Preservation Long Term Management Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written. In signing this Agreement, the Signatory warrants that he or she has the authority to convey the Conservation Easement on behalf of the Grantor.

GRANTOR:

City of Romulus, a Michigan municipality

By:_____
Alan R. Lambert

Its:        Mayor

and

By:_____
Ellen L. Craig-Bragg

Its:        Clerk

STATE OF MICHIGAN        }
                         } ss
COUNTY OF WAYNE          }

IF SIGNING ON BEHALF OF AN ORGANIZATION, THIS MUST BE COMPLETED:

The foregoing instrument was acknowledged before me this  15th  day of August, 2012 By Alan R. Lambert, Mayor of the City of Romulus and Ellen L. Craig-Bragg, Clerk of the City of Romulus, on behalf of the municipality.

_____
(Signature of Notary Public)

_____
Merrie C. Druyor
(Typed or Printed name of Notary Public)

My commission is in: _____Wayne_____ County, Michigan

Acting in: _____Wayne_____ County, Michigan

My Commission Expires: _____

MERRIE C. DRUYOR
Notary Public, State of Michigan
County of Wayne
My Commission Expires Mar. 14, 2013
Acting in the County of  Wayne

4

GRANTEE:

STATE OF MICHIGAN
DEPARTMENT OF ENVIRONMENTAL QUALITY
WATER RESOURCES DIVISION

Kimberly D. Fish, Assistant Division Chief

STATE OF MICHIGAN          }
                           } ss
COUNTY OF INGHAM           }

The foregoing instrument was acknowledged before me this 14th day of August, 2012,
by Kimberly D. Fish, Assistant Division Chief, Water Resources Division, State of Michigan, on behalf
of the Michigan Department of Environmental Quality.

(Signature of Notary Public)

Laura Smith

**LAURA SMITH**
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires Aug. 2, 2017
Acting In the County of Ingham

(Typed or Printed name of Notary Public)

Acting in: Ingham County, Michigan

My Commission is in  Ingham  County, Michigan

My Commission Expires:  8-2-17

Form Drafted By:
The Honorable William Schuette,
Attorney General
Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, Michigan 48909

**AFTER RECORDING, RETURN TO:**

**Michigan Department of Environmental Quality**
**Water Resources Division**
**Constitution Hall, 2nd Floor South**
**P.O. Box 30458**
**Lansing, Michigan 48909-7958**

Sanders Decl. Attachment 1

# LEGAL DESCRIPTION

Exhibit "A"

PARCEL DESCRIPTION (80-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-703)
(BASED ON WAYNE COUNTY TAX ROLLS)

A PARCEL OF LAND SITUATED IN THE EAST 1/2 OF SECTION 7 AND THE WEST 1/2 OF SECTION 8, TOWN 3 SOUTH, RANGE 9 EAST, INCLUDING ALL OF THE LOTS SOUTH OF THE S. LINE OF CHARLES AVE. (60 FT. WIDE) TOGETHER WITH ALL OF THE VACATED STREETS AND ALLEYS ADJACENT TO SAID AFOREMENTIONED LOTS, EXCEPTING ALL OF LOTS 54 THRU 58, 109 THRU 112, 171 THRU 174 AND 250 THRU 256 INCLUSIVE ALONG WITH THE VACATED STREETS AND ALLEYS ADJACENT TO SAID EXCEPTED LOTS OF DETROIT INDUSTRIAL CENTER SUB. (AS RECORDED IN L. 58, P. 96, WCR.) ALL OF SAID LANDS LOCATED IN THE CITY OF ROMULUS, WAYNE COUNTY, MICHIGAN AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE NW CORNER OF SAID SECTION 8 AND PROCEEDING N 87°16'11" E 660.0 FEET ALONG THE N LINE OF SAID SECTION 8 TO THE POINT OF BEGINNING; THENCE N 87°26'11" E 331.92 FEET; THENCE S 02°54'31" E 2675.20 FEET; THENCE N 89°45'50" E 1644.89 FEET TO THE W LINE OF THE CHESAPEAKE & OHIO R.R. RIGHT OF WAY; THENCE S 02°30'44" E 2424.51 FEET; THENCE N 89°59'23" W 348.21 FEET; THENCE N 00°00'37" E 80.21 FEET; THENCE N 89°59'23" W 178.82 FEET; THENCE N 03°00'27" W 164.51 FEET; THENCE N 89°59'23" W 165.0 FEET; THENCE N 88°38'29" W 303.42 FEET; THENCE N 89°59'23" W 320.50 FEET; THENCE N 02°13'09" W 1197.31 FEET; THENCE S 89°46'53" W 1348.20 FEET TO THE COMMON N-S LINE BETWEEN SAID SECTION'S 7 AND 8; THENCE S 02°16'31" E 347.35 FEET; THENCE S 87°07'39" W 328.20 FEET; THENCE S 02°17'03" E 1313.46 FEET; THENCE S 87°36'41" W 205.58 FEET; THENCE N 02°17'35" W 325.0 FEET; THENCE S 87°36'41" W 123.0 FEET; THENCE S 02°17'35" E 325.0 FEET; THENCE S 87°36'41" W 318.65 FEET; THENCE N 02°33'19" W 150.0 FEET; THENCE S 87°36'41" W 120.0 FEET; THENCE S 02°33'19" E 150.0 FEET; THENCE S 87°36'41" W 218.51 FEET; THENCE N 02°18'40" W 1307.79 FEET; THENCE S 86°56'10" W 770.84 FEET; THENCE N 02°20'50" W 1298.53 FEET; THENCE N 86°38'40" E 771.73 FEET; THENCE S 02°18'40" E 592.10 FEET; THENCE N 86°38'40" E 657.90 FEET; THENCE N 02°17'35" W 592.10 FEET; THENCE N 86°38'40" E 658.09 FEET; THENCE N 02°37'05" W 1104.28 FEET ALONG THE COMMON LINE BETWEEN SAID SECTION'S 7 AND 8 TO THE S LINE OF LOT 250 AS EXTENDED OF SAID DETROIT INDUSTRIAL CENTER SUB.; THENCE N 87°26'11" E 170.0 FEET ALONG SAID S LINE OF LOT 250 AND IT'S EXTENSION TO THE CENTERLINE OF THE ADJACENT 20 FEET WIDE ALLEY; THENCE S 02°37'05" E 10 FEET TO THE COMMON S LINE OF LOTS 58, 109 AND 174, AS EXTENDED; THENCE N 87°26'11" E 490.0 FEET ALONG THE SAID COMMON S LINE AS EXTENDED TO THE E LINE OF SAID DETROIT INDUSTRIAL CENTER SUB. ALSO BEING THE E LINE OF VACATED CRAIG AVE. (30 FEET WIDE); THENCE N 02°37'05" W 200.0 FEET ALONG THE EAST LINE OF VACATED CRAIG AVE. TO THE N LINE OF LOT 54 AS EXTENDED; THENCE S 87°26'11" W 165.0 FEET ALONG THE SAID N LINE TO THE NW CORNER OF SAID LOT 54; THENCE S 02°37'05" E 40.0 FEET TO THE SW CORNER OF SAID LOT 54; THENCE S 87°26'11" W 325.0 FEET ALONG THE COMMON N LINE TO LOTS 112 AND 171, AS EXTENDED TO THE CENTERLINE OF A 20 FEET WIDE VACATED ALLEY; THENCE S 02°37'05" E 10.0 FEET; THENCE S 87°26'11" W 170.0 FEET ALONG THE N LINE OF LOT 256 AS EXTENDED TO THE COMMON LINE BETWEEN SECTION'S 7 AND 8; THENCE N 02°37'05" W 480.0 FEET ALONG SAID COMMON LINE BETWEEN SECTION'S 7 AND 8 TO THE S LINE OF VACATED CHARLES AVE.; THENCE N 87°26'11" E 660.0 FEET ALONG SAID SOUTH LINE OF VACATED CHARLES AVE. TO THE E LINE OF VACATED CRAIG AVE.; THENCE N 02°37'05" W 910.0 FEET ALONG THE SAID E LINE OF VACATED CRAIG AVE. TO THE POINT OF BEGINNING. CONTAINS 224.37 ACRES OF LAND, MORE OR LESS. SUBJECT TO ALL EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY.

---

*LEGAL* DESCRIPTION

PART OF THE E 1/2 OF SEC. 7 & W 1/2 OF SEC. 8
T. 3 S., R. 9 E., CITY OF ROMULUS, WAYNE COUNTY
*TAX ID NO.: 80-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-703*

CLIENT:  CITY OF ROMULUS



**OHM**

34000 Plymouth Road | Livonia, MI 48150
p (734) 522-6711 | f (734) 522-6427

*Advancing Communities*

| DATE: | 07-23-12 | SHEET | JOB NO. |
|---|---|---|---|
| DRAWN BY: | SH | 1 OF 4 | 0155-12-0001 |
| DWG: | CONSV-ESMT | | |

# CONSERVATION EASEMENT DESCRIPTION

Exhibit "B"

## CONSERVATION EASEMENT'S
(OVER PARCEL # 80-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-703)

## EASEMENT No. 1

A PARCEL OF LAND SITUATED IN THE WEST 1/2 OF SECTION 8, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS, WAYNE COUNTY, MICHIGAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:
COMMENCING AT NW CORNER OF SAID SECTION 8; THENCE N 87°16'11" E 660.60 FEET ALONG THE N LINE OF SAID SECTION 8 TO THE POINT OF BEGINNING; THENCE N 87°26'11" E 158.16 FEET; THENCE S 02°37'05" E 1340.0 FEET; THENCE S 87°26'11" W 323.16 FEET; THENCE S 02°37'05" E 40.0 FEET; THENCE S 87°26'11" W 325.0 FEET; THENCE S 02°37'05" E 10.0 FEET; THENCE S 87°26'11" W 170.0 FEET; THENCE N 02°37'05" W 480.0 FEET; THENCE N 87°26'11" E 660.0 FEET; THENCE N 02°37'05" W 910.0 FEET TO THE POINT OF BEGINNING.
CONTAINING 517,234 SQUARE FEET OR 11.87 ACRES OF LAND, MORE OR LESS. SUBJECT TO ALL EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY.

## EASEMENT No. 2

A PARCEL OF LAND SITUATED IN THE EAST 1/2 OF SECTION 7 AND THE WEST 1/2 OF SECTION 8, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS, WAYNE COUNTY, MICHIGAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:
COMMENCING AT NW CORNER OF SAID SECTION 8; THENCE N 87°16'11" E 660.60 FEET ALONG THE N LINE OF SAID SECTION 8; THENCE N 87°26'11" E 331.32 FEET; THENCE S 02°54'31" E 1540.03 FEET; THENCE S 87°26'11" W 180.97 FEET TO THE POINT OF BEGINNING; THENCE S 02°37'05" E 854.38 FEET; THENCE S 86°38'40" W 198.66 FEET; THENCE S 02°37'05" E 248.97 FEET; THENCE S 88°26'10" W 589.64 FEET; THENCE S 02°14'22" E 268.16 FEET; THENCE N 89°46'53" E 664.70 FEET; THENCE S 31°40'24" E 820.58 FEET; THENCE S 89°46'53" W 1098.20 FEET; THENCE S 02°16'31" E 347.35 FEET; THENCE S 87°07'39" W 328.20 FEET; THENCE S 02°17'03" E 235.63 FEET; THENCE S 88°08'11" W 986.27 FEET; THENCE N 02°18'40" W 931.29 FEET; THENCE N 86°38'40" E 657.90 FEET; THENCE N 02°17'35" W 592.10 FEET; THENCE N 86°38'40" E 658.09 FEET; THENCE N 02°37'05" W 1104.28 FEET; THENCE N 87°26'11" E 170.0 FEET; THENCE S 02°37'05" E 10.0 FEET; THENCE N 87°26'11" E 648.16 FEET TO THE POINT OF BEGINNING.
CONTAINING 3,047,182 SQUARE FEET OR 69.95 ACRES OF LAND, MORE OR LESS. SUBJECT TO ALL EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY.

## EASEMENT No. 3

A PARCEL OF LAND SITUATED IN THE EAST 1/2 OF SECTION 7 AND THE WEST 1/2 OF SECTION 8, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS, WAYNE COUNTY, MICHIGAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:
COMMENCING AT NW CORNER OF SAID SECTION 8; THENCE N 87°16'11" E 660.60 FEET ALONG THE N LINE OF SAID SECTION 8; THENCE N 87°26'11" E 331.32 FEET; THENCE S 02°54'31" E 1540.03 FEET; THENCE S 87°26'11" W 180.97 FEET; THENCE S 02°37'05" E 854.38 FEET; THENCE S 86°38'40" W 198.66 FEET; THENCE S 02°37'05" E 248.97 FEET; THENCE S 88°26'10" W 589.64 FEET; THENCE S 02°14'22" E 268.16 FEET; THENCE N 89°46'53" E 664.70 FEET; THENCE S 31°40'24" E 820.58 FEET; THENCE S 89°46'53" W 1098.20 FEET; THENCE S 02°16'31" E 347.35 FEET; THENCE S 87°07'39" W 328.20 FEET; THENCE S 02°17'03" E 435.63 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING S 02°17'03" E 877.83 FEET; THENCE S 87°36'41" W 205.58 FEET; THENCE N 02°17'35" W 325.0 FEET; THENCE S 87°36'41" W 123.0 FEET; THENCE S 02°17'35" E 325.0 FEET; THENCE S 87°36'41" W 318.65 FEET; THENCE N 02°33'19" W 150.0 FEET; THENCE S 87°36'41" W 120.0 FEET; THENCE S 02°33'19" E 150.0 FEET; THENCE S 87°36'41" W 218.51 FEET; THENCE N 02°18'40" W 886.87 FEET; THENCE N 88°08'11" E 986.18 FEET TO THE POINT OF BEGINNING.
CONTAINING 811,977 SQUARE FEET OR 18.64 ACRES OF LAND, MORE OR LESS. SUBJECT TO ALL EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY.

---

**CONSERVATION EASEMENT**

PART OF THE E 1/2 OF SEC. 7 & W 1/2 OF SEC. 8
T. 3 S., R. 9 E., CITY OF ROMULUS, WAYNE COUNTY

TAX ID NO.: 80-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-703

CLIENT:  CITY OF ROMULUS

**OHM**

34000 Plymouth Road | Livonia, MI 48150
p (734) 522-6711 | f (734) 522-6427

*Advancing Communities*

| DATE: | 08-09-12 | SHEET | JOB NO. |
|---|---|---|---|
| DRAWN BY: | SH | 2A OF 4 | 0155-12-0001 |
| DWG: | CONSV-ESMT | | |

# CONSERVATION EASEMENT DESCRIPTION

Exhibit "B"

## EASEMENT No. 4

A PARCEL OF LAND SITUATED IN THE EAST 1/2 OF SECTION 7, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS, WAYNE COUNTY, MICHIGAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:
COMMENCING AT NE CORNER OF SECTION 7, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS; THENCE N 87°16'11" E 660.60 FEET ALONG THE N LINE OF SECTION 8, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS; THENCE N 87°26'11" E 331.32 FEET; THENCE S 02°54'31" E 2675.20 FEET; THENCE N 89°45'50" E 1644.89 FEET TO THE W LINE OF THE CHESAPEAKE & OHIO R.R. RIGHT OF WAY; THENCE S 02°30'44" E 2424.51 FEET; THENCE N 89°59'23" W 348.21 FEET; THENCE N 00°00'37" E 80.21 FEET; THENCE N 89°59'23" W 178.82 FEET; THENCE N 03°00'27" W 164.51 FEET; THENCE N 89°59'23" W 165.0 FEET; THENCE N 88°38'29" W 303.42 FEET; THENCE N 89°59'23" W 320.50 FEET; THENCE N 02°13'09' W 1197.31 FEET; THENCE S 89°46'53" W 1348.20 FEET; THENCE S 02°16'31" E 347.35 FEET; THENCE S 87°07'39" W 328.20 FEET; THENCE S 02°17'03" E 1313.46 FEET; THENCE S 87°36'41" W 205.58 FEET; THENCE N 02°17'35" W 325.0 FEET; THENCE S 87°36'41" W 123.0 FEET; THENCE S 02°17'35" E 325.0 FEET; THENCE S 87°36'41" W 318.65 FEET; THENCE N 02°33'19" W 150.0 FEET; THENCE S 87°36'41" W 120.0 FEET; THENCE S 02°33'19" E 150.0 FEET; THENCE S 87°36'41" W 218.51 FEET; THENCE N 02°18'40" W 1307.79; THENCE S 86°56'10" W 160.43 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING S 86°56'10" W 610.41 FEET; THENCE N 02°20'50" W 686.43 FEET; THENCE N 86°38'40" E 610.45 FEET; THENCE S 02°20'50" E 689.54 FEET TO THE POINT OF BEGINNING.
CONTAINING 419,915 SQUARE FEET OR 9.64 ACRES OF LAND, MORE OR LESS. SUBJECT TO ALL EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY.

## EASEMENT No. 5

A PARCEL OF LAND SITUATED IN THE EAST 1/2 OF SECTION 7, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS, WAYNE COUNTY, MICHIGAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:
COMMENCING AT NE CORNER OF CORNER OF SECTION 7, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS; THENCE N 87°16'11" E 660.60 FEET ALONG THE N LINE OF SAID SECTION 8, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS; THENCE N 87°26'11" E 331.32 FEET; THENCE S 02°54'31" E 2675.20 FEET; THENCE N 89°45'50" E 1644.89 FEET TO THE W LINE OF THE CHESAPEAKE & OHIO R.R. RIGHT OF WAY; THENCE S 02°30'44" E 2424.51 FEET; THENCE N 89°59'23" W 348.21 FEET; THENCE N 00°00'37" E 80.21 FEET; THENCE N 89°59'23" W 178.82 FEET; THENCE N 03°00'27" W 164.51 FEET; THENCE N 89°59'23" W 165.0 FEET; THENCE N 88°38'29" W 303.42 FEET; THENCE N 89°59'23" W 320.50 FEET; THENCE N 02°13'09' W 1197.31 FEET; THENCE S 89°46'53" W 1348.20 FEET; THENCE S 02°16'31" E 347.35 FEET; THENCE S 87°07'39" W 328.20 FEET; THENCE S 02°17'03" E 1313.46 FEET; THENCE S 87°36'41" W 205.58 FEET; THENCE N 02°17'35" W 325.0 FEET; THENCE S 87°36'41" W 123.0 FEET; THENCE S 02°17'35" E 325.0 FEET; THENCE S 87°36'41" W 318.65 FEET; THENCE N 02°33'19" W 150.0 FEET; THENCE S 87°36'41" W 120.0 FEET; THENCE S 02°33'19" E 150.0 FEET; THENCE S 87°36'41" W 218.51 FEET; THENCE N 02°18'40" W 2610.26 FEET; THENCE S 86°38'40" W 161.27 FEET TO THE POINT OF BEGINNING; THENCE S 02°20'50" E 572.09 FEET; THENCE S 86°38'40" W 610.45 FEET; THENCE N 02°20'50" W 572.09 FEET; THENCE N 86°38'40" E 610.45 FEET TO THE POINT OF BEGINNING.
CONTAINING 349,180 SQUARE FEET OR 8.02 ACRES OF LAND, MORE OR LESS. SUBJECT TO ALL EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY.

| CONSERVATION EASEMENT | OHM | 34000 Plymouth Road \| Livonia, MI 48150 |
|---|---|---|
| PART OF THE E 1/2 OF SEC. 7 & W 1/2 OF SEC. 8 | | p (734) 522-6711 \| f (734) 522-6427 |
| T. 3 S., R. 9 E., CITY OF ROMULUS, WAYNE COUNTY | | Advancing Communities |

| TAX ID NO.: 80-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-703 | DATE 07-23-12 | SHEET | JOB NO. |
|---|---|---|---|
| | DRAWN BY: SH | 2B OF 4 | 0155-12-0001 |
| CLIENT: CITY OF ROMULUS | DWG: CONSV-ESMT | | |

Sanders Decl. Attachment 1



# CONSERVATION EASEMENT SKETCH

Exhibit "C"

Sanders Decl. Attachment 1



CONSERVATION EASEMENT SKETCH

Exhibit "C"

Sanders Decl. Attachment 1



# INGRESS AND EGRESS EASEMENT SKETCH

Exhibit "D"

## INGRESS AND EGRESS EASEMENT SKETCH

Exhibit "D"

### INGRESS AND EGRESS EASEMENT

A VARIABLE WIDTH EASEMENT FOR INGRESS AND EGRESS BEING SITUATED IN THE EAST 1/2 OF SECTION 7, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS, WAYNE COUNTY, MICHIGAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:
COMMENCING AT NE CORNER OF SECTION 7, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS; THENCE N 87°16'11" E 660.60 FEET ALONG THE N LINE OF SECTION 8, TOWN 3 SOUTH, RANGE 9 EAST, CITY OF ROMULUS; THENCE N 87°26'11" E 331.32 FEET; THENCE S 02°54'31" E 2675.20 FEET; THENCE N 89°45'50" E 1644.89 FEET TO THE W LINE OF THE CHESAPEAKE & OHIO R.R. RIGHT OF WAY; THENCE S 02°30'44" E 2424.51 FEET; THENCE N 89°59'23" W 348.21 FEET; THENCE N 00°00'37" E 80.21 FEET; THENCE N 89°59'23" W 178.82 FEET; THENCE N 03°00'27" W 164.51 FEET; THENCE N 89°59'23" W 165.0 FEET; THENCE N 88°38'29" W 303.42 FEET; THENCE N 89°59'23" W 320.50 FEET; THENCE N 02°13'09' W 1197.31 FEET; THENCE S 89°46'53" W 1348.20 FEET; THENCE S 02°16'31" E 347.35 FEET; THENCE S 87°07'39" W 328.20 FEET; THENCE S 02°17'03" E 1313.46 FEET; THENCE S 87°36'41" W 205.58 FEET; THENCE N 02°17'35" W 325.0 FEET; THENCE S 87°36'41" W 123.0 FEET; THENCE S 02°17'35" E 325.0 FEET; THENCE S 87°36'41" W 318.65 FEET; THENCE N 02°33'19" W 150.0 FEET; THENCE S 87°36'41" W 120.0 FEET; THENCE S 02°33'19" E 150.0 FEET; THENCE S 87°36'41" W 198.51 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING S 87°36'41" W 20.0 FEET; THENCE N 02°18'40" W 1978.16 FEET; THENCE S 86°38'40" W 160.87 FEET; THENCE N 02°20'50" W 80.01 FEET; THENCE N 86°38'40" E 160.93 FEET; THENCE S 02°18'40" E 40.02 FEET; THENCE N 86°38'40" E 19.99 FEET; THENCE S 02°18'40" E 2018.49 FEET TO THE POINT OF BEGINNING.
CONTAINING 53,238 SQUARE FEET OR 1.21 ACRES OF LAND, MORE OR LESS. SUBJECT TO ALL EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY.

---

## INGRESS & EGRESS EASEMENT

PART OF THE E 1/2 OF SEC. 7 & W 1/2 OF SEC. 8
T. 3 S., R. 9 E., CITY OF ROMULUS, WAYNE COUNTY
TAX ID NO.: 80-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-703

CLIENT: CITY OF ROMULUS

**OHM**

34000 Plymouth Road | Livonia, MI 48150
p (734) 522-6711 | f (734) 522-6427

*Advancing Communities*

| DATE: | 08-09-12 | SHEET | JOB NO. |
|---|---|---|---|
| DRAWN BY: | SH | 4B OF 4 | 0155-12-0001 |
| DWG: | CONSV-ESMT | | |

Sanders Decl. Attachment 1

# EXHIBIT E

# WETLAND PRESERVATION LONG TERM MANAGEMENT AGREEMENT

This Wetland Preservation Long Term Management Agreement (Agreement) is made effective and entered into as of this __14th__ day of __August__, 2012, by and among:

The PERMITTEE, POST IT STABLES, INC., a Michigan corporation, whose address is: 100 West Long Lake Road, Suite 210, Bloomfield Hills, Michigan 48204.

The GRANTOR of the CONSERVATION EASEMENT and STEWARD, the City of Romulus, a Michigan municipality, whose address is: 11111 Wayne Road, Romulus, Michigan 48174

The GRANTEE, MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY (DEQ) whose address is P.O. Box 30458, Lansing, Michigan 48909-7958 or Constitution Hall, 2nd Floor South, 525 West Allegan Street, Lansing, Michigan 48933.

## Preamble:

The DEQ may in certain circumstances accept preservation of existing wetlands as mitigation for permitted wetland impacts, if the DEQ determines that all of the following conditions are met:

A. The wetlands to be preserved perform exceptional physical or biological functions that are essential to the preservation of the natural resources of the state or the preserved wetlands are an ecological type that is rare or endangered.
B. The wetlands to be preserved are under a demonstrable threat of loss or substantial degradation due to human activities that are not under the control of the applicant and that are not otherwise restricted by state law.
C. The preservation of the wetlands as mitigation will ensure the permanent protection of the wetlands that would be otherwise lost or substantially degraded.

## Recitals:

WHEREAS, the DEQ, pursuant to DEQ Permit (07-82-0174-P) and Consent Agreement (10-82-0003-V) with Post It Stables, Inc. requires long-term sustainable stewardship to minimize threats of loss or degradation to the wetlands and their integral habitat present on the Property (Conservation Easement Area).

WHEREAS, The City of Romulus agrees to enter into a Conservation Easement Agreement with the DEQ, and will also enter into a cooperative stewardship arrangement, whereby, in consideration for receipt of payment from Post It Stables, Inc, as an endowment (as defined below), the City agrees to provide for the long term management of the Conservation Easement Area pursuant to an approved management plan.

WHEREAS, the Permittee, Grantor and Steward, and the DEQ, all have mutual goals with respect to the permanent protection of the functions and values of the wetlands within the Conservation Easement Area.

**Conservation Values:**

The Property possesses ecological values of prominent importance to the public. These values are referred to as the "Conservation Values" in this Easement.

- The Property contains sustainable habitat for biodiversity of vegetation, birds, fish, and terrestrial animals.

- The Property contains natural wetland areas that provide habitat for aquatic invertebrates, reptiles, amphibians, and aquatic and/or emergent vegetation.

- The Property includes integral upland habitat that is integral to the wetland habitat.

- The property provides valued native forest land, which includes diverse native species, trees of many age classes and structural diversity, including a multi-story canopy, standing dead trees and downed logs.

### THREATS

- The property is threatened by surrounding land uses including encroachment by residential property along the western boundary and several ATV trails impacting the park.

- The property is threatened by encroachment of residential homeowners along the western boundary where vegetation has been removed and yard waste dumping has occurred.

- The property has been surveyed and has identified an area containing over an acre of non-native invasive plant species, primarily Phragmites and Reed Canary Grass, as well as several other areas where invasive plant species threaten the property. In addition, glossy buckthorn has been identified on the property.

- The property requires on-going maintenance activities to minimize encroachment from off road vehicles and requires fencing and sign placement to preserve the unique characteristics of the site.

- The property contains existing utility and drain easements that may contribute to the future degradation of the park through the introduction of invasive species and/ or issues associated with vehicular access and/ or utility or maintenance work that could impact the wetlands within the conservation easement site.

- The property is adjacent to a landfill where construction activities and waste collection may impact the property.

**NOW, THEREFORE,** in consideration of the mutual promises, agreements, and undertakings of the parties set forth in this Agreement, the parties agree to as follows:

## Terms and Conditions of the Stewardship Agreement:

### The Stewardship Agreement

The purpose of this Agreement is to provide long-term stewardship of the Conservation Easement Area to ensure the site will be managed and maintained to preserve the long term functions and values of the conservation values of the wetlands and their integral habitat.

Sanders Decl. Attachment 1

The Agreement shall be framed on the unique aspects of the property described as part of the existing site conditions documented in a future Baseline Report to be submitted to the DEQ by Post It Stables, Inc. by November 1, 2012 and shall address threats and uses associated with the property that will require long-term stewardship by the City of Romulus.

A. **(Permittee) Post It Stables, Inc. Responsibilities under this Agreement:**

1. Post It Stables, Inc. shall prepare or have the Steward prepare a Baseline Documentation Report that documents the current ecological conditions of the Conservation Easement Area.

2. The baseline document shall include the following :
   a. A detailed inspection of the Conservation Easement Area that includes a report that describes and documents the physical condition of the Conservation Easement Area as of the date of such inspection for the purpose of establishing a baseline against which to compare any future changes to the Conservation Easement Area (the "Baseline Report").
   b. Shall include a 2012 summer Floristic Quality Assessment that includes a list of plants to the species level and determination of the Floristic Quality Index (FQI) for each major vegetation type within the Conservation Easement Area.
   c. Shall include maps and information about prominent vegetation as determined, identification of wildlife, land use within easement boundaries, distinct natural features, and photographs.
   d. Shall contain soil maps, vegetation maps, site maps that depict all existing human-made modifications such as trails, utility corridors, pathways, and roads.
   e. Shall document existing uses within and surrounding the Conservation Easement Area and identify those uses that may impact the ecology of the Conservation Easement Area.
   f. Shall identify the location of photo stations with GPS and markers to provide future information about transect location for the purpose of providing a reference for future monitoring reports.
   g. Shall identify all patches of invasive species greater than 400 square feet in size located within the Conservation Easement Area and shall provide a management plan to control the patches of invasive species identified.

3. Post It Stables, Inc. shall be responsible for the cost and expense required to demarcate the Conservation Easement Area boundaries consistent with the requirements of the DEQ. Post It Stables Inc. shall be responsible for purchasing and placing signs at an adequate visibility and height for viewing, made of made of suitable material to withstand climatic conditions. The signs shall be placed in accordance with the DEQ approved sign location plan by King & MacGregor, dated July 19, 2012, and shall include the following language:

WETLAND CONSERVATION EASEMENT
NO CONSTRUCTION OR PLACEMENT OF STRUCTURES ALLOWED.
NO MOWING, CUTTING, FILLING, DREDGING OR
APPLICATION OF CHEMICALS ALLOWED.
MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY

4. Post It Stables, Inc. shall provide the necessary legal descriptions required for the recording of the conservation easement areas that meets the requirements for recording with the Wayne County Register of Deeds.

5. Post It Stables, Inc. shall be responsible for addressing unauthorized vehicular access through the establishment of sufficient fencing or other barriers which are acceptable to the parties and shall provide permanent fencing, temporary fencing, or other barriers such as placing logs over illegal pathway or as agreed upon by the parties to protect the easement site from encroachment from surrounding land uses in areas identified in preliminary reports or as identified in the Baseline Report as requiring additional protection.

Sanders Decl. Attachment 1

6. Post It Stables, Inc. shall pay to the Steward the amount of $25,000 as an endowment toward the Steward's costs for replacing and maintaining signs; replacing, maintaining and installing any fences not already provided by Post It Stables, Inc. as part of addressing immediate threats to the conservation easement area; preparing a management plan to address encroachment problems and invasive species removal; and for any future monitoring reports, and stewarding of the Conservation Easement Area as required in this Agreement.

**B.   (Grantor, Steward) The City of Romulus – Responsibilities under this Agreement**

The City of Romulus (the City) shall have the following rights, responsibilities and obligations with respect to the Conservation Easement and the Conservation Easement Area.

1.   The City shall not be permitted to initiate work in the Conservation Easement Area except as authorized under DEQ Permits, the Conservation Easement Agreement, or this Stewardship Agreement and Management plan.

2.   The City of Romulus as Grantor agrees to abide by the terms of the Conservation Easement Agreement and as Steward shall be responsible for creating a Conservation Easement Area Management Plan that details the goals and implementation actions that the City intends to undertake to manage the ecosystems of the Conservation Easement Area (the "Management Plan").

The Management Plan shall be submitted for approval to the DEQ by December 1st, 2012 and shall be based upon the information provided in the Baseline report.  The Management Plan must include the following details:

   a.   Specify how the Conservation Easement Area shall be managed and used in keeping with the conservation resource values and purposes of the Conservation Easement.
   b.   Implement plans to address the areas identified in preliminary reports as containing patches of invasive species greater than 400 square feet with a treatment plan and include a vegetation management strategy for controlling nonnative invasive plant species throughout the easement area.
   c.   Address overall site management to minimize any threats to the Conservation Easement Area that could have a negative impact on the long-term viability of the Conservation Easement.
   d.   Address existing uses and the maintenance issues associated with existing pathways, trails, or structures.
   e.   Shall identify a monitoring reporting time period as agreed upon with the DEQ.
   f.   Shall identify the City's maintenance responsibilities regarding long-term management of the site and protection of the site from encroachment by outside land uses.
   g.    Shall include recommendations for corrective actions, as may be necessary, in order to minimize future potential degradation to the conservation easement area. Recommendations may include, but shall not be limited to, advisory letters from the City to identified parties responsible for degradation, issuance of citations where possible for activities that may warrant such action, invasive species control action, fencing or blocking of illegal trails, and/ or additional signs posting the conservation easement boundaries.

3.   The City as Steward shall be responsible for replacing and maintaining signs to clearly demarcate the boundaries of the easement.

4.   Once Post It Stables, Inc, has completed fencing requirements to address identified encroachment issues, the City shall be responsible for installing, maintaining or replacing fences, as needed to minimize future encroachment of residential properties, particularly along the western most boundary of the property, and along the area adjacent to the landfill where construction traffic may impact the Conservation Easement Area.

5.   The City has the obligation to inspect the Conservation Easement Area a minimum of one (1) time per year to document the condition of the Conservation Easement Area as compared to the

Baseline Report. The City shall provide photos and a report of the site conditions and list any identified threats and recommendations for corrective actions, as may be necessary, in order to minimize future potential degradation of the conservation easement area and shall provide a copy of the annual monitoring report to the DEQ by December 1st, beginning with December 2013, and shall continue for five (5) years. After which, monitoring of the easement site with reports to the DEQ shall be conducted every 3 years provided no concerns are identified that may require more frequent reporting.

6. The City shall as part of its stewardship duties; work cooperatively with adjacent property owners to resolve any general compliance issues.

7. The City shall report significant complaints or any actual or threatened violations of the Conservation Easement to the DEQ.

8. The City shall not make any modifications to the Conservation Easement Area, or any vegetation contained therein, without the prior written consent of the DEQ or as part of the Management Plan.

## C. DEQ Responsibilities

1. The DEQ shall review the Baseline Report and the City's Management Plan. The DEQ retains final approval of these documents.
2. The DEQ shall exercise its enforcement authority under the Conservation Easement to prevent or correct any violations that may compromise the Conservation Easement Area.
3. The DEQ shall review monitoring reports prepared by the City to ensure the Steward's goals and implementation actions in managing the ecosystems of the Conservation Easement Area are met.
4. The DEQ shall oversee City's stewardship obligations to ensure the City is meeting goals and objectives of this Agreement.

## D. General Terms

1. This Agreement does not grant or convey to the DEQ or any other person or entity any right to possession or use of the Conservation Easement Area except as expressly provided herein.

2. This Agreement is binding upon, and inures to the benefit of the parties and their successors and assigns.

3. This Agreement, the Conservation Easement, and the DEQ consent agreement with Post It Stables, Inc. set forth the entire agreement of the parties with respect to the subject matter hereof, and supersede all prior or contemporaneous discussions, understandings and agreements related thereto. No amendment, alteration or modification of this Agreement shall be valid and binding unless in writing and signed by all parties hereto.

4. This Agreement shall he governed by and construed in accordance with the laws of the State of Michigan.

5. To the extent there is any conflict or inconsistency between this Agreement (including any plans and reports prepared hereunder) and the Conservation Easement, the terms and conditions of the Conservation Easement shall control and be binding on the parties, and shall supersede any conflicting or inconsistent terms in this Agreement.

6. For purposes of notices or any other writing permitted or required to be given under this Agreement, such notice shall be personally delivered or sent by first class mail, certified mail, or delivery by overnight courier service to the parties at the following addresses, as may be changed from time to time by notice hereunder being provided to the other parties:

If to the City:

City of Romulus
11111 Wayne Road
Romulus, Michigan 48174
Attention:  Alan R. Lambert

If to Permittee:

Post It Stables, Inc.
100 West Long Lake Road, Suite 210
Bloomfield Hills, Michigan 48204
Attention: Jack Krasula

If to DEQ:

MI Department of Environmental Quality
Water Resources Division
Constitution Hall, 2nd Floor South
P.O. Box 30458
Lansing, Michigan 48909-7958
Attention:   Conservation Easement Coordinator

If to the DEQ- District:

Michigan Department of Environmental Quality
Southeast Michigan Office
27700 Donald Court
Warren, Michigan 48092
Attention:  Andrew Hartz

In Witness Whereof, the parties have executed this Agreement on the date first above written.

**GRANTOR AND STEWARD:**

GRANTOR:

City of Romulus, a Michigan municipality

By: _____
        Alan R. Lambert
Its:        Mayor

and

By: _____
        Ellen L. Craig-Bragg
Its:        Clerk

STATE OF MICHIGAN          }
                                             } ss
COUNTY OF WAYNE          }

IF SIGNING ON BEHALF OF AN ORGANIZATION, THIS MUST BE COMPLETED:

The foregoing instrument was acknowledged before me this _____ day of August, 2012 By Alan R. Lambert, Mayor of the City of Romulus and Ellen L. Craig-Bragg, Clerk of the City of Romulus, on behalf of the organization.

_____
(Signature of Notary Public)

_____
(Typed or Printed name of Notary Public)

> MERRIE C. DRUYOR
> Notary Public, State of Michigan
> County of Wayne
> My Commission Expires Mar. 14, 2013
> Acting in the County of _____ Wayne

My commission is in: _____ Wayne _____ County, Michigan

Acting in: _____ Wayne _____ County, Michigan

My Commission Expires: _____ March 14, 2013

**PERMITTEE:**

Post It Stables, Inc.
A Michigan corporation

By: _____
        Jack Krasula
Its:        President

STATE OF MICHIGAN  }
                   } ss
COUNTY OF _Wayne_

IF SIGNING ON BEHALF OF AN ORGANIZATION, THIS MUST BE COMPLETED:

The foregoing instrument was acknowledged before me this _14th_ day of _August_____, 2012 by Jack Krasula, President of Post-It Stables, Inc., a Michigan corporation, on behalf of the organization.

_Kimberly S. Curtis_
(Signature of Notary Public)

_Kimberly S. Curtis_
(Typed or Printed name of Notary Public)

Acting in: _____Wayne_____ County, Michigan

My Commission is in: _Wayne_ County, Michigan

My Commission Expires: _1-23-2014_

**GRANTEE:**

STATE OF MICHIGAN
DEPARTMENT OF ENVIRONMENTAL QUALITY
WATER RESOURCES DIVISION

Kimberly D. Fish, Assistant Division Chief

STATE OF MICHIGAN  }
                   } ss
COUNTY OF INGHAM  }

The foregoing instrument was acknowledged before me this _14th_ day of _August_____, 2012 by Kimberly D. Fish, Assistant Division Chief, Water Resources Division, State of Michigan, on behalf of the Michigan Department of Environmental Quality.

_Laura Smith_
(Signature of Notary Public)

_Laura Smith_
(Typed or Printed name of Notary Public)

**LAURA SMITH**
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires Aug. 2, 2017
Acting in the County of Ingham

Acting in: Ingham County, Michigan

My Commission is in: _Ingham County_

My Commission Expires:  8 - 2 - 17

Form Drafted By:
The Honorable William Schuette,
Attorney General
Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, Michigan 48909

**AFTER RECORDING, RETURN TO:**
**Michigan Department of Environmental**
**Quality**
**Water Resources Division**
**Constitution Hall, 2nd Floor South**
**P.O. Box 30458**
**Lansing, Michigan 48909-7958**