# PLAINTIFFS' EXHIBIT 5

STATE OF MICHIGAN
DEPARTMENT OF ATTORNEY GENERAL



P.O. Box 30212
LANSING, MICHIGAN 48909

**DANA NESSEL**
ATTORNEY GENERAL

February 27, 2026

Todd M. Lyons
Senior Official Performing the Duties of Director
Immigration and Customs Enforcement
icesustainability@ice.dhs.gov

Re:     Early Notice and Public Review of a Proposed Activity in a 100- to 500-
Year Floodplain - Romulus, Michigan

Dear Mr. Lyons:

On behalf of the People of the State of Michigan, I write in response to the above-referenced Notice pertaining to Immigration and Customs Enforcement's (ICE) purchase of a warehouse located at 7525 Cogswell Street in Romulus, Michigan, for use as a detention facility for 500 migrants.  I am deeply troubled by ICE's purchase and planned use of the warehouse.  Most fundamentally, the Notice confirms that ICE, in its zeal to purchase and convert the Romulus Warehouse into a mass detention facility, appears prepared to run roughshod over Michigan's sovereign interests and federal and state law.

Our system of government and the law demand transparency and partnership with state and local governments.  But ICE seems determined not just to ignore the need for such cooperation, but to frustrate it.  Through its conduct, ICE appears intent to operate a mass detention facility a stone's throw from a middle school, an elementary school, and a protected wetland.  What's more, ICE purchased the warehouse *before* any attempt to communicate with the State of Michigan, its agencies, or any local governing body about it.

And these actions have been taken in the context of ICE leadership's stated goal for its mass detention warehouses to operate "like (Amazon) Prime, but with human beings." Jerod Macdonald-Evoy, *ICE Director Envisions Amazon-Like Mass Deportation System: 'Prime, but with Human Beings'*, Ariz. Mirror (Apr. 8, 2025), https://azmirror.com/2025/04/08/ice-director-envisions-amazon-like-mass-deportation-system-prime-but-with-human-beings/.  As reflected in the Notice, the Romulus Warehouse is not currently designed or outfitted to house, feed, bathe,

Todd M. Lyons
Page 2
February 27, 2026

protect, or provide adequate care for persons detained by ICE—let alone persons numbering in the hundreds.

The shortfalls in ICE's Notice document are evident.  Several statements in the Notice do not reflect a clear plan for the construction necessary to convert a warehouse into a detention facility and its impact on the floodplain where the warehouse sits.  The Notice provides so little information that we cannot reasonably assess if ICE's planned construction efforts would violate numerous legal requirements, including but not limited to, those reflected in the National Environmental Policy Act, the Clean Air Act, the Clean Water Act, the National Flood Insurance Act, the Flood Disaster Protection Act, and the Administrative Procedure Act.

Even the parts of the Notice that purport to provide conclusions actually provide no information at all.  The Notice claims, for example, that "no municipal system capacity constraints have been identified."  But ICE's failure to identify municipal constraints carries no significance when ICE never engaged with state, county, or municipal officials.

Additionally, the Notice states that "[t]he Michigan Department of Environment, Great Lakes, and Energy (EGLE) *may* require permits for certain construction activities within the floodplain" (emphasis added).  In fact, permits for activities in the floodplain will assuredly be required—but ICE has not, as of the date of this writing, either applied for any such permits or even reached out to EGLE to begin that process.

Furthermore, the Notice purportedly issued in accordance with Executive Order 11988.  Pursuant to this Executive Order, after determining that the proposed action will occur in a floodplain, the agency shall proceed with the action only upon a finding that "the only practicable alternative . . . requires sitting [sic] in a floodplain."  EO 11988 § 2.  Upon making such a finding, ICE was required to "prepare *and circulate*" its notice.  *Id.* (emphasis added).  This duty was additional to its duty to facilitate "early public review."  *Id.* § 4.  EO 11988 also requires compliance with Executive Order 11514, which provides that "Federal agencies shall," among other things: "consult with appropriate Federal, State and local agencies"; "ensure the fullest practicable provision of timely public information and understanding"; and "[i]nsure that information regarding existing or potential environmental problems and control methods . . . is made available to Federal agencies, States, counties, municipalities, institutions, and other entities, as appropriate."  EO 11514 § 2(a)–(c).  ICE's Notice complies with none of these requirements.  Upon information and belief, ICE made no effort to inform the public, or contact any State of Michigan agency or official, even though public records indicate that EGLE holds an environmental easement protecting nearby property.

Todd M. Lyons
Page 3
February 27, 2026

For the foregoing reasons, the Notice and its contents are insufficient, as is the time allotted for the public to engage with the important environmental and public health issues at stake. ICE must immediately cease further development of the property, plainly and publicly articulate its planned use and construction for the warehouse, engage in meaningful consultation with the appropriate state, county, and municipal officials, and comply with all state and local laws and permitting requirements for the project's impacts to the environment.

Sincerely,

Dana Nessel
Michigan Attorney General