**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **STATE OF MICHIGAN; CITY OF ROMULUS**, <br><br> Plaintiffs, <br><br> v. <br><br> **MARKWAYNE MULLIN**, et al., <br><br> Defendants. | Case No. 2:26-cv-10968 |

**DECLARATION OF ANDREW J. DEGREGORIO**

I, Andrew J. DeGregorio, hereby make the following declaration with respect to the above-captioned matter:

1.      I am employed by the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Office of Asset and Facilities Management (OAFM), as the Energy and Environmental Programs Manager. I have held this position since September 7, 2025.

2.      I have been employed by ICE since September 2025. Before starting with ICE, I was a Senior Environmental Protection Specialist with the Federal Emergency Management Agency (FEMA) for nearly thirteen (13) years. For six (6) years before my role with FEMA, I was the Director of the Bureau of Military Construction & Engineering/Facilities Design & Project Management Specialist for the Pennsylvania (PA) Army National Guard. Prior to serving as a federal employee, I had been an environmental and civil engineering consultant in the private sector since August of 1987. I also served in the U.S. Army Reserve and PA Army National Guard

as a soldier/officer from February 1983 through April 2013 (the last 15 years as an Engineer Officer)—retiring as a Lieutenant Colonel.

3. As the ICE Energy and Environmental Programs Manager (Environmental Protection Specialist), along with a staff of seven federal and contracted employees and in consultation with DHS Energy & Environment Division (EED) staff, I provide energy and environmental compliance subject matter expertise and compliance guidance to OAFM and ICE.

4. In my professional experiences, I have had to inspect and assess real property for easements, utility infrastructure, and construction, and ensure projects' environmental compliance, and am familiar with the elements and requirements of the National Environmental Policy Act (NEPA).

5. The statements contained in this declaration are based upon my personal knowledge, reasonable inquiry, and information made available to me in the course of my official duties from records, systems, databases, other DHS employees, and/or information portals maintained and relied upon by DHS.

6. As the Energy and Environmental Programs Manager, I am familiar with the newly acquired ICE property located in Wayne County, at 7525 Cogswell Street, Romulus, Michigan, 48174. The property consists of around 27 acres, upon which a large, currently vacant warehouse sits. The warehouse has a floor area of approximately 261,450 square feet. A Certificate of Inspection and Possession (CIP) inspection was completed on January 17, 2026, prior to the purchase.

7. I am also aware of and have reviewed the Phase I Environmental Site Assessment (ESA) in accordance with the American Society for Testing and Materials (ASTM), Practice E1527-21, Standard Practice for Environmental Site Assessments: Phase I Environmental Site

2

Assessment Process (2021). The ESA is the baseline environmental due diligence document for the site and describes the environmental condition of the property prior to acquisition.

8.      As described below, ICE has complied with the NEPA in execution of this project and continues to evaluate potential environmental impacts as additional information on the project and property are obtained. Real estate acquisition is provided for in DHS Categorical Exclusion (CATEX) C1, a non-documented CATEX.  As a result of this NEPA CATEX evaluation of the environmental impacts of the action considered, ICE prepared a Record of Environmental Consideration (REC) based on the assessed acquisition of the property, reasonable repairs to the property, and measures for the security of the property.  As documented in the REC dated March 24, 2026, DHS-ICE determined that these activities fit within DHS Categorical Exclusions.  At the time of acquisition, ICE understood the environmental conditions of the property, potential flood risk, and required mitigation. While the REC included plans for retrofitting the warehouse to house up to 500 to 1,000 detainees, with scalability to accommodate 2,000, since the date of the REC, ICE has continued to develop its construction plan. ICE currently does not expect to house more than 500 detainees at the facility. ICE will be conducting further NEPA analysis as to the retrofitting of the warehouse for detention prior to proceeding with any construction for that purpose, which will include an environmental assessment (EA) pursuant to NEPA.

9.      As of this date, no substantial work has been done at this facility. The first thing that must be done is to emplace temporary fencing around the perimeter of the building for security. This is necessary to protect the property. Along with fencing, ICE will need to install security cameras and security lighting,and have some fiberoptic cable laid for the building alarm system. Finally, there is a small amount of office space in the warehouse that would need to be

reconfigured and equipped to make it useful for ICE purposes, but this work would be mainly drywall demolition and installation of communications wiring and workstations.

10. As discussed above, ICE is still developing its plan for retrofitting the warehouse for detainees, including identifying the required upgrades to the warehouse for this purpose. Part of this assessment is the planned population for the facility, which currently is not expected to exceed 500 detainees. Once ICE has a defined proposed action for the facility, ICE will prepare an EA analyzing the potential effects of the proposed action. ICE will complete the preparation of an EA before ICE issues a final decision and before ICE authorizes construction to retrofit the facility for housing detainees.

11. As part of the construction plan, the vendor will need to coordinate with the local municipality for any increase in required utilities infrastructure including but not limited to potable water supplies and wastewater discharges. During the construction, the vendor will be contractually required to follow best management practices to reduce any environmental impacts. My understanding is that any reasonable repairs to the property and necessary security measures can be supported by existing utilities infrastructure. At some unknown point in the future, the facility may be retrofitted to support a population of approximately 500 detainees; whether the facility will provide temporary onsite storage of potable water and sewage (with timed release not to exceed current capacity) or require further build-out for this number of detainees will be determined. If need arises, my understanding is this concept is planned to be carried forward and designed/analyzed to include potential environmental impacts accordingly, and to ensure current water and wastewater systems are not overwhelmed.

12. ICE sent consultation letters under the National Historic Preservation Act (NHPA) on or around February 13, 2026, to the Michigan State Historic Preservation Office (MI SHPO)

and Tribal Historic Preservation Officials (THPOs). Furthermore, since much of the site is located in a Federal Emergency Management Agency (FEMA) Flood Insurance Rate Map (FIRM)/designated 100-year floodplain, analysis and a public notice requesting comments were required regarding potential impacts to floodplains by proposed actions and impacts of flooding on occupants of the property per Executive Order (EO) 11988, Floodplain Management. Analysis was conducted including consideration for necessary mitigation measures to be incorporated into the final design of the property to ensure safe occupancy, that is, to ensure protection of occupants from impacts of potential flooding of the property. ICE is finalizing the process of addressing public comments from the required public notice of proposed potential actions in floodplains, which was posted on the DHS website on February 5, 2026.

13.     Due to the nature of the acquisition of this property, which is already improved with an existing structure, and which will require mostly interior renovation and minor site improvements on pre-disturbed land to retrofit for ICE's intended use, proposed impacts from this project (per DHS Directive 023-01, Rev. 01, Implementation of the National Environmental Policy Act (Oct. 31, 2014), and Instruction Manual 023-01-001-01, Rev. 01, Implementation of the National Environmental Policy Act (NEPA) (Nov. 6, 2014) , were determined to be minor in nature and thus qualifying this property acquisition and initial repairs for a DHS-recognized CATEX.  In sum, the documents and information that were reviewed during this process at the time the NEPA analysis was conducted included the following:

- Vendor-provided zoning report
- Vendor-provided property condition report  (Exhibit 1)
- Vendor-provided engineering estimate keyed to an approximately 540 site detainee population level

- Certificate of Inspection and Possession inspection site visit and report

- Phase I Environmental Site Assessment  (Exhibit 2)

- Stamped ALTA Survey of the site

- Title Commitment

- Vendor-provided Environmental Report

- Appendices to vendor-provided Environmental Report

- Vendor-provided spreadsheet of environmental information to support ICE/DHS completion of CATEX/REC in DHS's Decision Support System (DSS)

- DHS Environmental Due Diligence Assessment Memorandum of Acceptance

- IPaC Portal Printout

Exhibit 1 is a true and correct copy of the property condition report prepared by the vendor for ICE, and Exhibit 2 is a true and correct copy of the Phase I Environmental Site Assessment prepared for by the vendor for ICE.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed at Washington, District of Columbia on April 21, 2026

ANDREW J DEGREGORIO

Digitally signed by ANDREW J DEGREGORIO
Date: 2026.04.21 15:30:19 -04'00'

Andrew J. DeGregorio
Environmental Protection Specialist
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement