UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE OF MICHIGAN; CITY OF
ROMULUS,

      Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;
MARKWAYNE MULLIN, in his official
capacity as Secretary of the Department of
Homeland Security; UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT; and TODD M.
LYONS, in his official capacity as Senior
Official Performing the Duties of the
Director of Immigration and Customs
Enforcement,

      Defendants.

No. 2:26-cv-10968

HON. JONATHAN J.C. GREY

MAG. ELIZABETH A. STAFFORD

**REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

_____/

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION**

Neil Giovanatti (P82305)
Benjamin Houston (P76733)
Assistant Attorneys General
Attorneys for Plaintiff State of Michigan
Michigan Dep't of Attorney General
525 W. Ottawa Street
Lansing, MI 48909
(517) 335-7622
GiovanattiN@michigan.gov
HoustonB1@michigan.gov

David F. Greco (P53523)
Attorney for Plaintiff City of
Romulus
Greco Law PLLC
143 Cadycentre #164
Northville, MI 48167
(248) 380-1975
David.Greco@Greco-Law.com

Defendants' opposition brief makes only one thing clear: They purchased the Romulus Warehouse without conducting a NEPA analysis or contacting city or State officials, therefore functionally conceding procedural violations of NEPA, the ICA, and the INA. Rather than seriously dispute noncompliance, Defendants spend pages confusing the issues and resort to flawed and convoluted procedural arguments. For the following reasons, their arguments are unavailing. Like the District of Maryland did when presented with near-identical circumstances, this Court should grant a preliminary injunction. *Maryland v. Mullin*, __ F. Supp. 3d __, No. 1:26-cv-733, 2026 WL 1045503 (D. Md. 2026).

## I.      Plaintiffs have standing and demonstrate irreparable harm.

Defendants argue Plaintiffs' numerous environmental injuries are speculative or not imminent, due to the unknown construction timeline and their purported agreement to later conduct an EA and follow local regulations. (PageID.812, 841–43.) But the NEPA injury has occurred; Defendants purchased the property on February 4th (PageID.57), but did not conduct any NEPA analysis until March 24th (PageID.848), thus risking significant harm to the State's sovereign environmental interests.[1] *Sierra Club v. Marsh*, 872 F.2d 497, 500 (1st Cir. 1989) ("[T]he harm consists of the added *risk* to the environment that takes

---

[1] Defendants' already-committed NEPA violations—to say nothing of their ICA and INA violations—negate any "well-trod presumption that officials properly execute their duties." (PageID.812.)

1

place when governmental decisionmakers make up their minds without having before them an analysis (with prior public comment) of the likely effects of their decision upon the environment."); *see also Klein v. U.S. Dep't of Energy*, 753 F.3d 576, 585–86 (6th Cir. 2014) (Stranch, J., concurring). And this environmental harm continues: Regardless of the hidden timeline, Defendants entrenched themselves in the decision to complete construction and open a detention facility by spending over $34 million to purchase the Romulus Warehouse. *See Milwaukee Inner-City Congregations Allied for Hope v. Gottlieb*, 944 F. Supp. 2d 656, 663–64 (W.D. Wis. 2013); *see also Sierra Club*, 872 F.2d at 500–01. If Defendants continue to entrench themselves throughout this litigation, Plaintiffs will be further harmed.

The City has also already suffered injury in the diversion of public safety resources. (PageID.144.) Defendants' claim a lack of traceability (PageID.813), but it was entirely "predicable" that protests and vandalism—and the ensuing local law enforcement response—would flow from Defendants' actions. *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 383 (2024); (*see also* PageID.805–09, 828 (noting public resistance to ICE, and attempting to excuse noncompliance with the ICA due to concerns of "arsonists and vandals").) Likewise, the City's reputational injury and lost business / income alone demonstrate injury sufficient for standing.

## II.   Defendants' procedural arguments are inapposite.

Many of Defendants' INA arguments relate to § 1231(g)(1)'s "appropriate

2

places of detention" requirement, which they claim grants the Secretary of DHS unfettered and unreviewable discretion. (PageID.816–18.) But Plaintiffs did not move on their § 1231(g)(1) claim and expressly stated they were setting aside that claim at this stage. (PageID.106.) As such, even if Defendants' arguments are correct (a point Plaintiffs do not concede), they are irrelevant.

Defendants also claim § 1252(f)(1)'s prohibition on orders "enjoin[ing] or restrain[ing] the operation of" the INA precludes relief. (PageID.822.) But § 1252(f)(1) is irrelevant to the NEPA and ICA claims, *see Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, __ F. 4th __, 2026 WL 1110616, *24–25 (D.C. Cir. 2026), and Plaintiffs do not seek to enjoin the operation of § 1231(g)(2); they seek pre-construction satisfaction of its requirements, *cf. Friends of the Everglades, Inc. v. Noem*, __ F. 4th __, 2026 WL 1077624, at *7 (11th Cir. 2026).

Defendants' next argument, that § 1231(h) precludes review, is circular. Attempting to distinguish cases that reject this same argument, (*see* PageID.124 n.10), Defendants argue they "acted within § 1231(g) authority"—i.e., that they are correct on the merits. (PageID.824.) But Defendants do not explain how assuming that they are correct on the merits renders Plaintiffs' INA claims presumptively unreviewable. And the case they cite in support of this proposition, *Vang v. Gonzales*, 237 F. App'x 24, 31 (6th Cir. 2007), does not provide clarity.

Defendants further claim, without support, that § 1231(g) does not protect

3

the interests of states and localities, but protects only the federal public fisc. (PageID.824–25.) This ignores caselaw repeatedly holding that interests protected under the INA include fiscal and administrative burdens imposed upon states and localities—which also involve the public fisc. *E.g.*, *Cook Cnty. v. Wolf*, 962 F.3d 208, 219–20 (7th Cir. 2020); *Texas v. United States*, 50 F.4th 498, 521 (5th Cir. 2022); *Florida v. United States*, 660 F. Supp. 3d 1239, 1268 (N.D. Fla. 2023).

Finally, Defendants dispute APA finality, asserting their plans for construction remain in flux. (PageID.826–27.) But Plaintiffs challenge the decision to *purchase* the Romulus Warehouse with the intent to convert / retrofit it for use as an immigration detention center. (PageID.114–16.) Defendants completed the purchase, own the Romulus Warehouse, and remain intent on operating it as a detention center. The lack of a detailed blueprint is inconsequential.

## III.   Defendants failed to comply with NEPA.

Defendants' Record of Environmental Consideration (REC) makes clear their environmental review was rushed and impermissibly retrospective. The entirety of the REC, for instance, was prepared on March 24, 2026—the same day Plaintiffs filed their complaint and well after the February 4th purchase date. (PageID.848.) The REC is also the first ever indication Defendants intended to invoke Categorical Exclusions (CEs). (*E.g.*, PageID.882–1221 (making no mention of CEs); PageID.64–66 (same).) But "[a] post hoc invocation of a [CE] during

4

litigation cannot justify a failure to prepare an EA or EIS." *Maryland*, 2026 WL 1045503, at *23 (quotations omitted).

Next, although CEs are a "form of NEPA compliance," Defendant impermissibly "stacks" three CEs to create Frankenstein's Exclusion for the Romulus Warehouse. This approach is irreconcilable with the statute, which requires an agency to prepare an EA or EIS unless "the proposed agency action is excluded pursuant to *one of* the agency's" CEs. 42 U.S.C. §§ 4336(a)(2), (b)(2) (emphasis added). The use of the singular "one of" establishes that a *single* CE must apply to the *entire* agency action. *See Friends of the Inyo v. U.S. Forest Serv.*, 103 F.4th 543, 557 (9th Cir. 2024) (rejecting CE stacking approach because breaking down projects into "seemingly innocuous acts" would "swallow the protections of NEPA"); *Maryland*, 2026 WL 1045503, at *22–23.

Finally, the claimed CEs are insufficient for several reasons:

- The CEs each address only the *purchase* of the Romulus Warehouse; not the major federal action at issue: the cumulative purchase, construction, and use as an immigration detention center;

- For C1, the property is adjacent to an environmentally sensitive area—the protected wetland;

- For D1, converting a *warehouse* into a *detention facility* that houses hundreds of people will result in a "change in the functional use of the property"; and

- For E2, the action will substantially increase the number of motor vehicles at the facility or in the area, and will result in uses that exceed existing support infrastructure.

## IV. Defendants failed to comply with the ICA and INA.

Like NEPA, both the ICA and the INA impose prerequisites that the federal government must satisfy when engaging in certain actions. Defendants openly admit their failure to comply with either. Defendants state that they did not consider any State-owned facilities, as required under the INA, because doing so "would have been a waste of time."[2] (PageID.821.) And they point to a single, post-purchase solicitation of public input as evidence of compliance with the ICA, (PageID.827–28), but do not explain (apart from a vague gesture to concern about "arsonists and vandals," (PageID.828)) why they failed to engage pre-purchase. Nor do Defendants show any actual consideration of the post-purchase input they received—let alone produce a "reviewable record" explaining why they acted "in disharmony" with unanimous opposition. *City of Rochester v. U.S. Postal Serv.*, 541 F.2d 967, 976 (2d Cir. 1976).

Rather than attempt to demonstrate compliance with the INA and ICA's requirements, Defendants seek to minimize the mandatory nature and level of attention they must devote. Defendants assert that the ICA's requirement is a

---

[2] Contrary to Defendants' accusation (PageID.819–20), Plaintiffs identified numerous vacant facilities that should have been considered. (PageID.125.) Plaintiffs also have not demanded Defendants "door-knock[ ] every local government within a five-state radius to inquire about off-market facilities." (PageID.820–21.) They have simply requested that Defendants demonstrate compliance with the INA's existing-facility requirement—something Defendants have not done, and based on their arguments here, likely cannot do.

"weak procedural one" that "does not require door-knocking to solicit extra views or a formal analysis of the views submitted." (PageID.828.) This argument understates the necessary contacts and ignores the "affirmative obligation" that an agency "develop a reviewable record" when acting "in disharmony" with state and local objectives. *City of Rochester*, 541 F.2d at 976; (*see also* PageID.123.)

They also call the INA's existing-facility provision a "loose requirement" that applies only to new buildings, not remodels. (PageID.818, 820.) But § 1231(g)(2)'s use of the term "shall" is not "loose"; it is mandatory. *Kingdomware Tech., Inc. v. United States*, 579 U.S. 162, 171–72 (2016). And "construction"—a term DHS has utilized when discussing proposed renovations to the Romulus Warehouse (PageID.64–65)—cannot be read so narrowly. Defendants also entirely fail to address Plaintiffs' arbitrary and capricious claim premised on Defendants' past practice of compliance with § 1231(g)(2). (PageID.126–28.)

### CONCLUSION AND RELIEF REQUESTED

For these reasons and the reasons stated in their opening brief, Plaintiffs request the Court grant their motion, issue a preliminary injunction against Defendants, and grant such further relief is just and appropriate.

Respectfully submitted,                           Dated:  April 28, 2026

/s/ Neil Giovanatti                               /s/ David F. Greco
Neil Giovanatti (P82305)                          David F. Greco (P53523)
Benjamin Houston (P76733)                         Attorney for Plaintiff City of
Attorneys for Plaintiff State of Michigan         Romulus

7

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which will provide

electronic copies to all counsel of record.

/s/ Neil Giovanatti
Neil Giovanatti (P82305)
Assistant Attorney General

8